## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VIRESH PATEL, and** | : | **No. 3:06cv1846** |
| **PRAVIN PATEL,** | : | |
| **Plaintiffs** | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **SHILPA PATEL, and** | : | |
| **CHANDRAKANT PATEL,** | : | |
| **Defendants** | : | |

### MEMORANDUM

Before the Court for disposition is counter-defendants Viresh Patel and Pravin

Patel's Motion To Dismiss (Doc. 7).  This matter has been briefed and is ripe for

disposition.

**I.     Background**

Defendants in the instant action responded to an advertisement for a sale of

plaintiffs' property and businesses in Wilkes Barre, Pennsylvania by engaging in a

purchase and stock purchase agreement. (See Defendants' Counterclaim)

(hereinafter "Counterclaim") (Doc. 5)).[1]  The property that defendants acquired in the

transaction were seven limited-liability companies and the companies' real property

---

[1] In compliance with Rule 12(b)(6) we will adopt as true and cite to the facts in the counterclaim.  See e.g., Hosp. Bldg. Co. V. Trs. Of Rex Hosp., 425 U.S. 738, 740 (1976) ("Since we are reviewing a dismissal on the pleadings, we must of course, take as true the material facts alleged in petitioner's amended complaint."); Jenkins v. McKeithen, 395 U.S. 411, 421-422 (1969) ("For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted.").

holdings, which included a deli, grocery store and apartment building. (Complaint Ex. A) (hereinafter "Complaint") (Doc.1).  The advertisement represented that all apartments were rented in the building for sale, and that they yielded a rental income of $30,000/year. (Amended Answers of the Defendants Ex. E)(Hereinafter "Defendants Answer")(Doc. 5).  The advertisement averred the store offered an income of $90,000/year.  The deli, the advertisement claimed, had a net income of $113,000/year.  (Id.).  In later conferences, plaintiffs told the defendants that the store had a gross income of $1600/day and a profit margin of 40%, and that the deli could eventually produce a similar profit margin.  (Defendants Answer at ¶ 22).

In October 2005, the defendants entered into a stock purchase agreement and agreement of sale with the plaintiffs. (Complaint Ex. A).  Defendants agreed to purchase seven separate limited liability companies the plaintiffs owned. (Id.).  The total purchase price was $675,000.  (Complaint Ex. B)  At closing, the defendants paid plaintiffs $300,000 and executed a note for the rest of the purchase price. (Defendants Answer at ¶ 7).  In December 2005, the defendants executed a mortgage with the plaintiffs as mortgagee for the various parcels of property. (Complaint Exs. B, C).  At the plaintiffs' request, the defendants also executed a security agreement with the plaintiffs as the secured party.   (Complaint Ex. C).

The defendants claim they relied on the representations and advertisements of the plaintiffs in entering into the transaction. The defendants made five monthly payments on the note, two of which fell below the $1500 dollars the agreement

2

required.  (Complaint at ¶ 12).  After the defendants failed to make their June 2006

payment, the plaintiffs, by and through their attorney John P. Rogers, sent the

defendants written notice that payment was demanded pursuant to the note.

(Complaint at ¶ 13).   When the defendants refused to pay, plaintiffs filed suit for

breach of contract and to recover funds they allege the defendants fraudulently

seized. On or about June 13, 2006, counsel for defendants tendered the return of all

property sold under the sales agreement and demanded that plaintiffs return to the

defendants all consideration paid and reimburse defendants for all expenses and

costs.  (Counterclaim at ¶ 17).   Prior to the filing of the instant action, on June 30,

2006, the Defendants, Shilpa Patel and Chandrakant Patel, living in Wilkes Barre,

Pennsylvania, filed a complaint in the Court of Common Pleas of Luzerne County,

Pennsylvania.[2]  (Brief in Support of Plaintiff's Motion to Dismiss (hereinafter

"Plaintiff's Brief") at 2).  The Plaintiffs filed a Notice of Removal in the United States

District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1441(a).

Id. at 2-3.  In July 2006, the Plaintiffs filed a motion to dismiss under Fed. R. Civ.

Proc. 12(b)(6).  Id. at 3.   After oral argument before this court, the parties agreed the

defendants would withdraw the action which they initially filed in Luzerne County

against the plaintiffs.  Id.   An order was entered dismissing the defendants'

complaint without prejudice.  Id.  In November 2006, the defendants filed an answer

---

[2] We note that the initial complaint the defendants filed in Luzerne County asks for the same relief as their current filing.

and counterclaim to the instant complaint with this court. Id. at 3-4.

The defendants argue that after completing the transaction, defendants received tax information from the plaintiffs that indicated that the deli and grocery store had lost money in 2005.  (Counterclaim at ¶33)(Doc. 5).  The defendants contend that the income generated by the business did not meet the advertised amounts in the months after the sale.  The defendants postulate that the income from the properties does not justify the sale price, and the plaintiff knew this at the time of sale.  The defendants argue that the exaggerations and misrepresentations of income earned by the properties constituted deceptive conduct which created a misunderstanding by defendants of the value of the businesses, and these exaggerations fraudulently induced defendants to enter into and execute the agreements and the related documents.  The defendants also contend the plaintiff violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter "UTPCPL").

The defendants as counter-plaintiffs on their first count seek recession of the stock purchase agreement, the agreement of sale, the promissory note, the mortgage, security agreements, and all other documents related to the sales transaction.  Further, the counter-plaintiffs seek restitution from the counter-defendants for the full purchase price paid as well as costs, losses, and expenses incurred by the counter-plaintiffs including court costs and attorneys fees and any other relief the court may deem necessary and proper.  The counter-plaintiffs ask for

4

the same relief for in Count II as they asked for in Count I.  In Count III, which

alleges a violation of the UTPCPL, the counter-plaintiffs ask for the same relief as

above with the addition of a request for treble damages.  The counter-defendants

filed a motion to dismiss pursuant to Fed. R. Civ. Proc., 12(b)(6).

## II.    Jurisdiction

This court has jurisdiction under 28 U.S.C.§ 1332.  ("The district court shall

have original jurisdiction of all civil actions where the matter in controversy exceeds

the sum or value of $75,000, exclusive of interest and costs, and is between. . .

citizens of different states.") The counter-plaintiffs are citizens of Pennsylvania[3] and

the counter-defendants are citizens of New Jersey.  The amount in controversy,

exclusive of interests and costs, exceeds $75,000.

## III.   Standard

When analyzing a 12(b)(6) motion to dismiss, all well-pleaded allegations of

the complainant must be viewed as true and in the light most favorable to the non-

movant to determine whether "under any reasonable reading of the pleadings, the

plaintiff may be entitled to relief."  Colburn v. Upper Darby Township, 838 F.2d 663,

665-666 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d

503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir.

---

[3]Pennsylvania law provides that the court should "honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."  Kruzits v. Okuma Machine Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994).  The parties agree that we should apply Pennsylvania law.

1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)(citations omitted).  The court does not have to accept legal conclusions or unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  The complaint is properly dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 520-521 (1972)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

## IV. Discussion

The counter-defendants move for dismissal on several grounds, each of which is discussed fully below.

## A. The Gist of the Action Doctrine

The counter-defendants argue that the counter-plaintiff's suit is barred by the gist of the action doctrine.  Under this doctrine a plaintiff may not plead a tort action as a means of stating a breach of contract action.  If a party brings a claim that "arises solely from the contract between the parties, where the duties allegedly breached were created and grounded in the contract, where liability stems from the contract, or where the tort claims essentially duplicates a breach of contract claim or the success of which is wholly dependent on the contract," the claim is barred under

the doctrine. eToll Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (internal citations and quotation marks omitted). The counter-defendants contend that the allegations in the counter-plaintiffs' complaint are based upon conduct that amounts to breach of contract.  They postulate the allegations that the income earned by the businesses do not match the promises that the counter-defendants made prior to the agreement, are a complaint about adequacy of consideration and not about the counter-defendants' conduct.  Concurrently, complaints by the counter-plaintiff that counter-defendants fraudulently misrepresented the income the business earned are complaints about the negotiations that lead to the contract and should be barred under the doctrine.

The counter-plaintiffs respond that the fraud the counter-plaintiffs claim is not barred by the rule because the fraud alleged in the complaint is not fraud in the performance of the contract but fraud in the creation of the contract.  Under this theory, the contract should be voided by the court and the counter-plaintiffs entitled to restitution.  Counter-plaintiffs argue that a party that purchases property and suffers fraud is entitled to restitution from the seller. Counter-plaintiffs also seek treble damages.

The key to the disposition of this issue is whether the gravamen of the claim is found in tort or in contract.  Contract actions arise form breach of duties mutually agreed to, while torts have their basis in violations of duties imposed as a matter of social policy.  Phico Ins. Co. V. Presbyterian Medical Serv. Corp., 663 A.2d 753, 757

7

(Pa. Super. Ct. 1995).   The case law in this area is broad and divergent.  The Pennsylvania Supreme Court has yet to adopt or to reject the gist of the action doctrine but the Pennsylvania Superior Court and the federal courts, including the Third Circuit, have repeatedly predicted that it would apply this doctrine.  See e.g. eToll Inc., 811 A.2d 10, 15-16 (applying gist of the action doctrine to determine that a company's fraud claim was really a claim for breach of contract); Bash v. Bell Tel. Co., 601 A.2d 825, 829-830 (Pa. Super. Ct. 1992) ("Although non-performance of a contract does not constitute a fraud . . . it is possible that a breach of contract also gives rise to an actionable tort . . . however, the wrong ascribed to the defendant must be the gist of the action the contract being collateral.") (citing Closed Circuit Corporation of America v. Jerrold Electronics Corp., 426 F. Supp. 361, 364 (E.D. Pa. 1977) (citations omitted); Quandry Solutions, Inc. v. Verifone, Inc., No.07-097, 2007 U.S. Dist. WL 655606 (E.D. Pa. March 1, 2007) (applying gist of the action doctrine to bar claims that were based on performance of the contract and not fraud in the inducement).  Because the Pennsylvania Supreme Court is silent on this issue, we must predict how the Pennsylvania Supreme Court would decide this case.  See Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000) ("Because there was no reported decision by the Pennsylvania Supreme Court . . . it was the duty of the district court to predict how the Pennsylvania Supreme Court would [interpret the law] . . . if presented with this case.")  (citing Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir. 1981)).

8

> In predicting how a matter would be decided under state law we examine: 1) what the Pennsylvania Supreme Court has said in related areas; 2) the decisional law of the Pennsylvania intermediate courts; 3) federal appeals and district court cases interpreting state law; and 4) decisions from other jurisdictions that have discussed the issues we face here.

Hughes v. Long, 242 F.3d 121, 128 (3d Cir. 2001)(citing Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 406 (3d Cir. 2000)).

"Fraud in the inducement of a contract would not necessarily be covered by [the gist of the action] doctrine because fraud to induce a person to enter into a contract is generally collateral (i.e. not interwoven with) the terms of the contract itself."  eToll, 811 A.2d at 17 (citing Foster v. Northwestern Mutual Life, No. 02-cv-2211, 2002 U.S. Dist. WL 31991114 (E.D. Pa. July 26, 2002). Here the counter-plaintiffs are pleading that the counter-defendants' misrepresentations in the initial advertisement and conversations that occurred during negotiation concerning the potential for income of the businesses induced them to enter into the agreement. The parties entered into a fully integrated agreement which stated that "buyer has independently confirmed the size and financial performance of the business and is not relying on the seller's warranties or representations."  (Complaint Ex. A at 6). This specific clause superceded the previous representations of the sellers.  The integration clause dealt with the specific issue from which counter-plaintiffs seek to make their fraud claim; the seller's prior representations.  Accordingly, under the gist of the action doctrine the counter-plaintiff's claims for fraud and misrepresentations

9

during the negotiation period are intertwined with the contract and not collateral to it. The counter-plaintiff's fraud and misrepresentation counterclaims essentially duplicate the breach of contract claim. The counter-plaintiff's entered into an agreement with the counter-defendants to purchase several LLCs and through that transaction, the holdings of the LLCs. The counter-defendants allegedly misrepresented the income potential of the businesses.  The parties contract specifically dissevers any prior representations, including the businesses profitability. The duties that the counter-plaintiffs allege the counter-defendants breached are grounded in their agreement. The parties' agreement is at the heart of the counter-plaintiff's tort counterclaims, and therefore, the gist of the counter-plaintiff's fraud and misrepresentation counts are contractual. See e.g., Tillman v. Rite Aid Corp., No. 00-2865, 2001 U.S. Dist. Lexis 24049 (E.D. Pa. November 13, 2001) (granting an employer's motion to dismiss when the court found that the employees claims stemmed from the contractual relationship); Sunquest Info. Systems v. Dean Witter Renyolds, Inc., 40 F. Supp. 2d 644 (W.D. Pa.1999) (granting judgment for defendant when plaintiff's fraud in the inducement claims were barred by an integration clause); Horizon Unlimited, Inc. v. Silva, No. 97-7430, 1998 U.S. Dist. Lexis 2223 (E.D. Pa. Feb. 26, 1998) (defendant's motion to dismiss plaintiff's negligent misrepresentation claim granted where court found that "plaintiff's mere allegation of negligence is not sufficient to create a distinct tort remedy.").   The counter-plaintiffs are suing on a breach of contract theory, stemming from the businesses poor performance.  The

10

gist of the action doctrine, therefore, does not permit such an action.  We will grant

the counter-defendants' motion to dismiss counter-plaintiff's breach-of-contract

claim.

## B. The Parole Evidence Rule

The Pennsylvania Supreme Court has explained the parole evidence rule in

these terms:

> Where the parties, without any fraud or mistake, have deliberately put their
> engagements in writing, the law declares the writing to be not only the best,
> but the only, evidence of their agreement. All preliminary negotiations,
> conversations and verbal agreements are merged in and superseded by the
> subsequent written contract. . . and unless fraud, accident or mistake be
> averred, the writing constitutes the agreement between the parties, and its
> terms and agreements cannot be added to nor subtracted from by parol
> evidence.

Yocca v. Pittsburgh Steeler Sports, Inc., 854 A.2d 425, 436 (Pa. 2004) (quoting

Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924)).

The counter-defendants point to paragraph 7.01 of the stock purchase

agreement between the parties, which sets out an integration clause reading:

> This agreement sets forth the entire understanding of the parties.  Any
> previous agreements or understandings of the parties regarding the subject
> matter hereof are merged and superseded by this agreement.

A similar clause exists in the agreement of sale.  Counter-defendants claim that

counter-plaintiffs cannot bring a fraudulent misrepresentation claim on the contract

because of this clause, which triggers the parole evidence rule.  The counter-

plaintiffs argue that prior representations about the property's prior income record

fraudulently induced them to sign the contract.  The fully integrated agreement does not include these representations.  One of the agreements specifically states "buyer has independently confirmed the size and financial performance of the business and is not relying on the seller's warranties or representations."  (Complaint Ex. A  at 6).  The counter-defendants argue that case law holds that an integration clause triggers the parole evidence rule even when there are claims of fraud in the inducement.

The counter-plaintiffs contend that the parole evidence rule does not apply.  The counter-plaintiffs argue the parole evidence rule is not triggered because the contracts are ambiguous and outside evidence is required to resolve those ambiguities. There are two separate agreements which transfer the property at issue.  Each document has an integration clause which creates an ambiguity by failing to acknowledge the existence of the other agreement. The counter-plaintiffs contend the existence of the two contracts means that the parties did not intend either contract to be complete representation of their agreement.  The counter-plaintiffs point to various provisions in the agreements to demonstrate ambiguity. The counter-plaintiffs note that the contracts contain a provision providing $125,000 in goodwill money; counter-plaintiff says this indicates that an ongoing business was being purchased rather than the stock of several limited liability companies (hereinafter LLC), and this money represents a means of dealing with undetermined portions of the agreement.  The counter-plaintiffs also point to inconsistencies and ambiguities in the two contracts to argue that the rule should not apply.  The

agreements for sale of property and stock served the same purpose (to transfer

property to the plaintiffs) but their terms were not the same, and the property

transferred is not the same in both contracts.  Under these circumstances the

counter-plaintiffs argue that parole evidence is admissible to clarify the ambiguities

and inconsistences between the two agreements.

The first step of our analysis is determining the scope of the parol evidence

rule.

> To determine whether or not a writing is the parties' entire contract, the writing
> must be looked at and if it appears to be a contract complete within itself,
> couched in such terms as import a complete legal obligation without any
> uncertainty as to the object or extent of the [parties'] engagement, it is
> conclusively presumed that [the writing represents] the whole engagement of
> the parties.

Id. at 436 (quoting Gianni 126 A. at 792).  "An integration clause which states that a

writing is meant to represent the parties' entire agreement is also a clear sign that

the writing is meant to be just that and thereby expresses all of the parties'

negotiations, conversations, and agreements made prior to its execution." Id. at 436

(citing HCB Contractors v. Liberty Place Hotel Assocs., 652 A.2d 1278, 1280 (Pa.

Super. Ct. 1995)); McGuire v. Schneider, 534 A.2d 115, 117 (Pa. Super. Ct. 1987)

aff'd, 548 A.2d 1223 (Pa. 1988).   "Once a writing is determined to be the parties'

entire contract, the parol evidence rule applies and evidence of any previous oral or

written negotiations or agreements involving the same subject matter as the contract

is almost always inadmissible to explain or vary the terms of the contract." Id. at 195

(quoting  Yocca 854 A.2d at 436)(citing Bardwell v. Willis Co., 100 A.2d 102, 104

(Pa. 1953); (McGuire 534 A.2d at 116-11).

Exceptions to this general rule exist, however. One exception is that "parol

evidence may be introduced to vary a writing meant to be the parties' entire contract

where a party avers that a term was omitted from the contract because of fraud,

accident, or mistake." Id. (quoting Yocca 854 A.2d at 437)(citations omitted). "In

addition, where a term in the parties' contract is ambiguous, 'parol evidence is

admissible to explain or clarify or resolve the ambiguity, irrespective of whether the

ambiguity is created by the language of the instrument or by extrinsic or collateral

circumstances.'" Id. (quoting  Yocca 854 A.2d at 437) (citing Estate of Herr, 161 A.2d

32, 34 (Pa. 1960).

In this instance the counter-plaintiffs have alleged that the two agreements

have ambiguities and contradictions which requires parole evidence. This court must

determine whether the writings presented fully represent  the parties' agreement and

further whether there is ambiguity in the agreements that requires parole evidence.

At the most basic level the writings propose to transfer a form of property between

the parties.  The type of property being transferred is the issue.   The initial stock

purchase agreement purported to transfer seven limited liability companies from the

plaintiff to the defendant.  This first contract contained an integration clause which

disavowed all previous representations, specifically referencing representations

concerning the businesses' profitability; "buyer has independently confirmed the size

14

and financial performance of business and is not relying on seller's warranties or

representations."  (Complaint Ex. A at 6).

On the same day the plaintiffs and defendants entered into an agreement of

sale.  This transaction outlined the holdings of the LLCs that the plaintiff was

transferring to the defendant.  The second document did not reference the stock

which was purported to be transferred in the initial sale. This contract also contained

an integration clause with language similar to that of the first.

> "It is a general rule of law that where one contract refers to and incorporates
> the provisions of another both shall be construed together. The Pennsylvania
> cases indicate that even where there is no specific reference to a prior
> agreement or prior agreements, several contracts shall be interpreted as a
> whole and together."

Shehadi v. Northeastern Nat'l Bank, 378 A.2d 304, 306 (Pa. 1977) (citations

omitted).  See e.g, Amin v. Lammers, No. Civ. A. 94-5980, 1995 U.S. Dist. WL

231048 (E.D. Pa. April 18, 1995) ("Under Pennsylvania law, separate contracts that

are entered into at the same time as part of the same business action are construed

together.") (citations omitted); International Milling Co. v. Hachmeister, 110 A.2d 186,

191 (Pa. 1955) ("If contracting parties choose they may express their agreement in

one or more writing and, in such circumstances, the several documents are to be

interpreted together, each one contributing (to the extent of its worth) to the

ascertainment of intent of the parties.")(citations omitted); Kroblin Refrigerated

Express, Inc. v. Pitterich, 805 F.2d 96, 107 (3d Cir. 1986) ("It is a general rule of

contract law that where two writings are executed at the same time and are

intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties.") (citations omitted). See also, Amin at *12 (citing International Milling Co., 110 A.2d at 191) (Kroblin Refrigerated Express, Inc., 805 F.2d at 107-109) ("The presence of integration clauses in separate agreements is not a bar to the agreements being construed together as long as the agreements are part of the same business transaction."); Neville v. Scott, 127 A.2d 755, 757 (1956) (where two agreements are made as part of one transaction they will be read together to express the essential elements of the parties' undertaking, notwithstanding the presence of an integration clause in the second agreement).

We find that the two documents signed by the parties sets forth the entire agreement of the parties.  By reading the documents together it is clear that the plaintiffs transferred seven LLCs and the holdings of those LLCs, which included real property, to the defendants.   Parole evidence is not needed to define the parties' agreement as we are satisfied that the two writings executed on the same day can be harmonized and embody the parties' entire agreement. Further, the mortgage and security agreement entered into by the parties on December 5, 2005 are still valid.  These additional terms, which included the correct price of sale, were reduced to writing and executed by the parities.  This additional terms were subsequent to the original agreement and are not barred from admission by the parole evidence rule.

We now turn to the counter-plaintiffs' claim of fraud in the inducement.

16

> [Pennsylvania law] permits the parole evidence of representations concerning
> a subject dealt with in an integrated written agreement and made prior to or
> contemporaneous with the execution of the agreement to modify or avoid the
> terms of that agreement only where it is alleged that the parties agreed that
> those representations would be included in the agreement but were omitted by
> fraud, accident or mistake.  This is commonly referred to as "fraud in the
> execution" because the party proffering the evidence contends that he or she
> executed the agreement because he or she was defrauded by being led to
> believe that the document he or she was signing contained the terms that
> were actually omitted therefrom.   Such a case is to be distinguished from
> "fraud in the inducement" as the instant one, where the party proffering
> evidence of additional prior representations does not contend that the parities
> agreed that the additional representations would be in the written agreement,
> but rather claims the representations were fraudulently  made and that but for
> them, he or she never would have entered into the agreement.

1726 Cherry St. Partnership v. Bell Atl. Properties, Inc., 653 A.2d 663, 666 (Pa.

Super. Ct. 1995).  In the instant action there is an issue of fraud in the inducement

rather than fraud in the execution. The counter-plaintiffs did in fact sign two

agreements, which they now dispute, with the counter-defendants. The counter-

plaintiffs claim that they would not have entered into the agreement without the

counter-defendants' representations as to the potential profit of the businesses.  The

counter-plaintiffs were represented by counsel and entered into two agreements,

both of which had integration clauses.  The first agreement specifically stated that by

signing the agreement the plaintiffs were disaverring all prior representations

concerning the businesses profitability.  "A party can not justifiably rely on oral

representations yet sign a contract denying the existence of those representations."

See Yocca, 854 A.2d at 439 (quoting Sunquest Info. Systems, 40 F. Supp. 2d 644 at

654).  The prior representations, even if taken as true, are barred from admission

17

under the parole evidence.  For these reasons the counter-defendants' motion to dismiss Count I of the counter-plaintiffs' claim is granted.

## C. Existence of a  Fiduciary Duty

The counter-plaintiffs contend that recission should be granted based on the breach of a duty arising out of a confidential relationship.  The counter-plaintiffs point to their relationship with the counter-defendants prior to commencing the agreement. The two parties met through the plaintiff's newspaper ad in the <u>Gujarat Times</u>.  They met several times to discuss the sale over dinner at each other's homes.  During these dinners the plaintiffs assured the defendants of the profitability of the businesses.  At one of these dinners, Viresh Patel (plaintiff) took the defendant to a shrine he had built in his home and explained his religious beliefs and convictions. Viresh Patel allegedly told the defendants that he was selling to them because of their need and that he would help them for a month with their new business.  Viresh Patel was the one who suggested that the defendants purchase the LLCs because it would be faster and save money on taxes.  The defendants also contend that Viresh Patel was the one who recommended an attorney for them, Patrick Aregood.  The plaintiffs also arranged the first meeting with Mr. Aregood and drove the defendants to that meeting with the Attorney.

The counter-defendants contend that no fiduciary relationship had been established and that the parties negotiated an arms length transaction.  The parties did not know each prior to this transaction.  Though the counter-defendants admit

18

that the parties became friendly, they claim such friendliness does not constitute to a

fiduciary relationship.  Counter-defendants argue that there is no allegation that the

counter-plaintiffs gained a special confidence in them.

"A fiduciary relation exists where there is a special confidence reposed in one

who in equity and good conscience is bound to act in good faith and with due regard

to the interest of the one reposing the confidence; it exists where confidence is

reposed on the one side and the resulting superiority and influence are found on the

other side." Stewart v. Hooks, 94 A.2d 756, 759 (1953).

> In general, a confidential relation, or fiduciary relation, the two terms being
> ordinarily used interchangeably, within the meaning of the rule that a
> constructive trust arises from the abuse or violation of such a relation, exists
> wherever confidence is reposed on one side and there is a resulting
> superiority and influence on the other. It has been said that there is no
> invariable rule which determines the existence of a confidential relationship,
> but that ordinarily there must be not only confidence of the one in the other,
> but also on the part of the former some inequality, dependence, weakness,
> want of knowledge, or other conditions giving to the latter some advantage
> over the former.

Id.  The burden of proving a confidential relationship is on the party asserting its

existence.  See Kees v. Green, 75 A.2d 602, 603 (Pa. 1950) ("the burden of proving

confidential relationship...rests upon the person asserting the same.").  The

Supreme Court of Pennsylvania has recognized that "the concept of a confidential

relationship cannot be reduced to a catalogue of specific circumstances, invariably

falling to the left or right of a definitional line."  Owens v. Mazzei, 847 A.2d 700, 709

(Pa. Super. Ct. 2004) (quoting In re Estate of Scott, 316 A.2d 883, 885 (Pa. 1974)).

A confidential relationship exists "whenever the law recognizes that a party is bound

to act for the benefit of another, and can take no advantage to himself." <u>Frowen v.</u>

<u>Blank</u>, 425 A.2d 412, 416-417 (Pa. 1980).[4]   If a confidential relationship is found,

"the party in whom the confidence is reposed obtains an apparent advantage over

the other, he is presumed to have obtained that advantage fraudulently; and if he

seeks to support the transaction, he must assume the burden of proof that he has

taken no advantage of his influence or knowledge and that the arrangement is fair

and conscientious." <u>In re Estate of Evasew</u>, 584 A.2d 910, 912-913 (Pa. 1990). This

special confidence can result from "an overmastering dominance on one side, or

weakness, dependence, or justifiable trust, on the other." <u>Id.</u> (citations omitted).  The

Pennsylvania Supreme Court has held that "a business association may be the basis

of a confidential relationship only if one party surrenders substantial control over

some portion of his affairs to another."  <u>In re Estate of Scott</u>, 316 A.2d at 886.[5]

Counter-plaintiffs have sufficiently alleged a confidential relationship between

the parties to survive a motion to dismiss.  If they can show after discovery that the

content of their meetings with counter-defendants were such that they developed

such a reliance on counter-defendants that they became dependant on them,

---

[4]<u>See also</u>, <u>In re Estate of Clark</u>, 359 A.2d 777, 781 (Pa. 1976) (A confidential
relationship exists when one party "has reposed a special confidence in another to
the extent that the parties do not deal with each other on equal terms.") (citing <u>Truver</u>
<u>v. Kennedy</u>, 229 A.2d 468. 474 (Pa. 1967) (quoting <u>Ringer v. Frinfrock</u>, 17 A.2d 348
(Pa. 1941)).

[5]<u>See</u> e.g., <u>Union Trust Co. v. Cwynar</u>, 131 A.2d 133 (Pa. 1957) (finding that the
collection of rents did not amount to a confidential relationship); <u>Stanis v. Simpson</u>,302
A.2d 29 (Pa. 1973) (finding that translating business records did not amount to a
confidential relationship.).

counter-plaintiffs could prevail on this count.  Accordingly, we will deny the motion to dismiss on this piont.

**D. Claims under Pennsylvania's Unfair Trade Practices and Consumer Protection Law**

The counter-plaintiffs next assert that the counter-defendants violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL).  73 P.S. § 201-1.  The UTPCPL prohibits unfair or deceptive acts in the conduct of any trade or commerce.  "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance."  Yocca 578 Pa. at 501(citations omitted).  This case is analogous to Yocca, in that the counter-plaintiffs are attempting to rely on the counter-defendants' prior representations to demonstrate a justifiable reliance.  However, like the plaintiffs in Yocca, the counter-plaintiffs signed an integrated writing that specifically disavowed the prior representations. Given the Commonwealth's adoption of the parole evidence rule, by signing the agreement the counter-plaintiffs "disclaimed reliance on any such [prior] representation." Id. at 502 (citations omitted).  Given that the counter-plaintiffs, due to the parole evidence rule, are unable to demonstrate reliance, we grant the counter-defendants' motion to dismiss Count III of the counter-plaintiff's claim.[6]

---

[6] The counter-plaintiffs have conceded that they cannot bring a claim under the law if their claim was only about securities purchased from the counter-defendants.   They argue that their claim is related to the purchase and sale of all of the assets of two on-going businesses and that the transfer of stock was a mechanical means of facilitating the

21

**Conclusion**

For the above stated reasons, we will grant the counter-defendants' motion to dismiss Count I and Count III of the counter-plaintiffs' complaint.  We will deny their motion to dismiss on Count II.

---

transfer of the businesses to the counter-plaintiffs together with their assets.  They also argue that they did not purchase securities but stock in limited liability companies and that this purchase is not an investment security as contemplated by the Third Circuit.

The Third Circuit has held that the purchase of securities or an investment security are not included within the definition of goods under the UTPCPL.  <u>See</u> <u>Klien v. Robin OPP and Quality Products, Inc.</u>, 944 F.Supp 396 (E.D. Pa. 1996) (holding that "plaintiff's claim for violation of the Pennsylvania's Unfair Trade Practices and Consumer Protection Law must be dismissed because the statute is inapplicable to the purchase of securities."); <u>Algrant v. Evergreen Val. Nurseries Ltd. Partners</u>, 126 F.3d 178 (3d Cir. 1997) (finding that the UFTPCPL did not apply to investment securities.).  Given the nature of the issue raised by this counter-claim, we decline to make a decision on this question in this procedural posture as the motion to dismiss this claim has been granted on other grounds.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VIRESH PATEL, and                  :              No. 3:06cv1846,
PRAVIN PATEL,                      :
      Plaintiffs            :              (Judge Munley)
                        :
           v.                   :
                        :
SHILPA PATEL, and                  :
CHANDRAKANT PATEL,                 :
      Defendants             :

## ORDER

**AND NOW**, to wit, this 28th day of September 2007, Counter-Defendants'

Viresh Patel and Pravin Patel's motion to dismiss (Doc. 7) is hereby **GRANTED** in

part and **DENIED** in part as follows:

    1) The motion to dismiss Count I of the counterclaim is **GRANTED;**

    2) The motion to dismiss Count II of the counterclaim is **DENIED**; and

    3) The motion to dismiss Count III of the counterclaim is **GRANTED**.


                          **BY THE COURT:**


                          **s/ James M. Munley**
                          **JAMES M. MUNLEY**
                          **United States District Court**